UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  23-24702-CIV-DAMIAN

RAFAEL AGUILA and ACCELERATED
DEVICE APPROVAL SERVICES,

      Plaintiffs,

v.

RQM+ LLC, *et al.*,

      Defendants.

_____/

## ORDER GRANTING RQM+ LLC'S MOTION TO DISMISS [ECF NO. 11]

**THIS CAUSE** is before the Court on Defendant RQM+ LLC's ("RQM+") Motion to Dismiss [ECF No. 11 ("Motion")], filed December 19, 2023.

THE COURT has reviewed the Motion, the parties' briefing [ECF Nos. 18 ("Response") and 21 ("Reply")], the pertinent portions of the record, including the declarations and exhibits submitted in support of the Motion, Response, and Reply, and relevant legal authorities, and is otherwise fully advised. After careful review of the pleadings and declarations, and construing Plaintiffs' *pro se* pleadings liberally, this Court concludes it lacks personal jurisdiction over RQM+, and therefore, the Motion is due to be granted.

## I.    RELEVANT BACKGROUND[1]

Plaintiffs, Rafael Aguila ("Aguila") and Accelerated Device Approval Services ("ADAS"), a sole proprietorship owned by Aguila, (collectively, "Plaintiffs"), are in the

---

[1] This Court previously laid out a more detailed summary of the factual background and procedural history in its Order on Defendant Headsafe's Motion to Quash Service of Process. *See* ECF No. 72. The background information relevant to the Motion now before this Court is set forth herein.

business of medical device evaluations. [ECF No. 1-3 at 6–56 ("Am. Compl.")] ¶ 4]. This action arises out of the business engagement among Plaintiffs and Defendants, RQM+,[2] Headsafe Mfg. Pty. Ltd. ("Headsafe"), Cryptych Pty Ltd ("Cryptych"), and Greg Roger (collectively, the "Defendants"), in connection with third-party medical device review services. *See generally* Am. Compl. Plaintiffs allege that, in April 2019, Defendant Cryptych entered into a contract with ADAS pursuant to which ADAS would provide third-party medical device review services to Cryptych in connection with the U.S. Food and Drug Administration's ("FDA") Center for Devices and Radiological Health's ("CDRH") regulatory review of the NuroChek device. *Id.* ¶¶ 17, 30–31.

RQM+ is a limited liability company based in Pennsylvania that specializes in consulting services for regulatory approvals of new medical devices. *Id.* ¶ 6. Plaintiffs allege that RQM+ served as the authorized U.S. agent for Headsafe, Cryptych, and Roger. *Id.* As Plaintiffs allege in the Amended Complaint, non-party Allison Komiyama ("Ms. Komiyama") was a regulatory consultant for Cryptych, Headsafe, and Roger, and was primarily tasked with facilitating the CDRH approval of the NuroChek device. *Id.* Relevant here, Plaintiffs allege that, at the time the parties were engaged in the regulatory review process for the NuroChek device, Ms. Komiyama was employed by non-party AcKnowledge Regulatory Services ("AcKnowledge"), which was later acquired by RQM+ in December 2021. *Id.* ¶ 61. Notably, according to the Amended Complaint, the NuroChek device was officially approved by the CDRH on April 23, 2020. *Id.* ¶ 8.

---

[2] In the Notice of Removal, RQM+ indicates there is no legal entity by the name "RQM+ LLC" and that, upon information and belief, Plaintiffs intended to sue Regulatory and Quality Solutions, LLC. For simplicity's sake, this Defendant will be referred to herein as RQM+.

On September 26, 2023, Plaintiffs, proceeding *pro se*, filed a Complaint in the Eleventh Judicial Circuit Court in Miami-Dade County, Florida, against the Defendants. *See generally* ECF No. 1-2 at 5–11. While the action was pending in state court, Plaintiffs filed an Amended Complaint, the operative pleading, alleging, *inter alia*, that the Defendants made false representations to the CDRH about Plaintiffs' business conduct, which allegedly led to the revocation of Plaintiffs' accreditation as a third-party medical device reviewer with the FDA. *See generally* Am. Compl. ¶¶ 16–29, 58–91.

In the Amended Complaint, Plaintiffs assert five claims against the Defendants: (1) Racial Discrimination in Medical Device Safety Testing, in violation of the Florida Civil Rights Act ("FCRA") of 1992 (Fla. Stat. § 760.01, *et seq.*) and the Florida Patient's Bill of Rights and Responsibilities ("FPBRR") (Fla. Stat. § 381.026(4)(d)(1)); (2) Fraudulent Misrepresentation; (3) Breach of Contract (solely against Cryptych); (4) Tortious Interference with Business Relations; and (5) Violation of the Florida Security of Communications Act ("FSCA") (Fla. Stat. § 934.01 *et seq.*). *Id.*

On December 12, 2023, Defendant RQM+ removed the action to federal court. [ECF No. 1]. And, on December 19, 2023, RQM+ filed the Motion now before the Court seeking to dismiss the Amended Compliant pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of personal jurisdiction, and, alternatively, pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. [ECF No. 11]. Plaintiffs filed a Response in opposition to the Motion on December 27, 2023 [ECF No. 18], and RQM+ filed a Reply on January 3, 2024 [ECF No. 21]. The Motion is fully briefed and ripe for adjudication.

While the Motion to Dismiss has been pending, Plaintiffs filed a Motion to Remand on December 21, 2023 [ECF No. 14], based on a lack of diversity jurisdiction and a Motion

for Preliminary Injunction on January 17, 2024 [ECF No. 24], Defendant Headsafe filed a Motion to Quash Service of Process on January 26, 2024 [ECF No. 34], on February 8, 2024, Defendant RQM+ filed a Motion to Stay Discovery [ECF No. 42], and on April 8, 2024, the Defendants filed a Joint Motion to Stay the Case [ECF No. 58].

On July 8, 2024, this Court entered an Order Denying Plaintiffs' Motion to Remand, finding Defendants had established complete diversity of jurisdiction and that all Defendants had consented to removal. [ECF No. 69]. This Court then granted the Defendants' Motion to Stay on July 10, 2024, and stayed these proceedings pending a ruling on the dispositive motions. [ECF No. 70].

On August 12, 2025, this Court entered Orders addressing service of process and personal jurisdiction. Specifically, in the Order on Defendant Headsafe's Motion to Quash, this Court found that Plaintiffs had not established that they properly effected service on Headsafe and, therefore, that this Court lacks personal jurisdiction over Headsafe. [ECF No. 72]. Headsafe was dismissed as a Defendant in this action. *Id.* In the Order on Defendants Cryptych and Roger's Motion to Quash and Dismiss, this Court granted the Defendants' Motion to Quash Service of Process and dismissed Defendants Cryptych and Roger without prejudice. [ECF No. 73]. In that Order, Plaintiffs were given twenty (20) days, until September 2, 2025, to seek leave to attempt to effectuate service on these Defendants. *Id.* The record reflects Plaintiffs did not seek leave to do so.

Thus, at this point, only Defendant RQM+ remains.

## II.   LEGAL STANDARDS

### A.  Failure To State A Claim – Federal Rule of Civil Procedure 12(b)(6).

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . [and] a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73).

### B.  Lack Of Personal Jurisdiction – Federal Rule of Civil Procedure 12(b)(2).

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011). To survive a motion to dismiss, a plaintiff must plead

sufficient facts to establish a *prima facie* case of jurisdiction over the non-resident defendant. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). In other words, "[t]he plaintiff bears the initial burden of alleging sufficient jurisdictional facts to make a *prima facie* case; if the defendant rebuts with contrary affidavit evidence, the plaintiff reassumes the burden." *Id.* (citing *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The plaintiff establishes a *prima facie* case if it "presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted).

To determine whether personal jurisdiction exists over an out-of-state defendant, federal courts undertake a two-step analysis. *Verizon*, 810 F. Supp. 2d at 1324. First, a court must determine whether, pursuant to state law, the applicable state long-arm statute is satisfied. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must consider "whether the exercise of jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 858–59 (11th Cir. 2013). The Due Process Clause requires that the defendant have minimum contacts with the forum state so that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Id.* "Both parts [of the test] must be satisfied for a court to exercise personal jurisdiction over a non-resident." *Am. Fin. Trading Corp. v. Bauer*, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002).

At this stage, this Court accepts the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp.*, 216 F.3d at 1291. If the defendant refutes personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech.*, 218 F.3d at 1249. The Court construes all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."); *see also Consol. Dev. Corp.*, 216 F.3d at 1291.

### C. Leniency Afforded Pro Se Litigants.

In addressing the merits of the Motion and relevant pleadings, this Court is mindful that courts afford a liberal construction to the allegations of *pro se* litigants, holding them to more lenient standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). "With a typically heavy caseload and always limited resources, a district court cannot be expected to do a [*pro se* litigant's] work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). In addition, *pro se* litigants are still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), *cert. denied*, 493 U.S. 863 (1989).

## III.   DISCUSSION

With the foregoing in mind, this Court addresses the issues raised in RQM+'s Motion. As indicated above, RQM+ seeks dismissal pursuant to Rule 12(b)(2) based on a lack of personal jurisdiction. Alternatively, RQM+ seeks dismissal under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

Before a court addresses the question of whether personal jurisdiction exists under the long-arm statute, the court must determine "whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808 n.9 (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (internal quotation marks omitted)); *see also Equitrac Corp. v. Delaney*, No. 09-60629-CIV, 2009 WL 10667046, at *5 (S.D. Fla. Aug. 31, 2009) (Altonaga, J.) ("Because the Court's consideration of whether personal jurisdiction exists must be undertaken in the light of the claims presented, the undersigned first determines whether the Complaint states any claim for relief, and if so, on what theories.").

Therefore, this Court begins its analysis by determining whether the Amended Complaint states any claim upon which relief can be granted.

### A. Whether The Amended Complaint States Any Claim Upon Which Relief Can Be Granted.

In the Motion, RQM+ argues that Plaintiffs have alleged no cognizable claims against it because Plaintiffs' allegations concern a different company (AcKnowledge – certain assets of which were acquired by RQM+ after the alleged misconduct) and its former owner Ms. Komiyama (who has since become an employee of RQM+). RQM+ contends that the Amended Complaint contains no well-pleaded allegations that RQM+ can or should be held liable for Ms. Komiyama's or AcKnowledge's supposed actions or omissions at issue in this case. Mot. at 9–10. Additionally, RQM+ argues that the Amended Complaint suffers from

several additional defects, including failure to exhaust administrative remedies under the FCRA, failure to plead fraud with particularity, and failure to adequately allege the elements for tortious interference and violation of the FSCA. *See generally* Mot. at 20–28.

### 1. Count I – Racial Discrimination Claim Under The FCRA.

In Count I of the Amended Complaint, Plaintiffs allege that the Defendants engaged in a discriminatory practice in violation of the Florida Civil Rights Act (FCRA) by "excluding African American individuals from the NuroChek device's safety testing." Am. Compl. ¶ 99. Plaintiffs claim that Defendants' actions, "which specifically targeted a trait closely associated with African Americans – dreadlocked hair – fall within the ambit of racial discrimination prohibited under the FCRA." *Id.* ¶ 100. Plaintiffs also claim that Defendants' conduct violates the Florida Patient's Bill of Rights and Responsibilities (FPBBR). *Id.* ¶ 98.Plaintiffs asserted these allegations as to all of the Defendants collectively.

RQM+ argues that Plaintiffs' FCRA claim should be dismissed for two reasons: (1) Plaintiffs failed to exhaust their administrative remedies, and (2) the alleged misconduct is not an activity that falls within the statute's ambit. Mot. at 24–25. In their Response, Plaintiffs aver that their FCRA claim is "not predicated on discriminatory employment practices but rather on the discriminatory ongoing exclusion of individuals with dreadlocks from the safety testing of the NuroChek device." Resp. at 11. According to Plaintiffs, "[t]his targeted exclusion is a direct affront to the inclusive principles enshrined in the FCRA, which prohibits racial discrimination in various sectors, including healthcare." *Id.* Plaintiffs contend, without citing any authority in this Circuit, that the requirement to exhaust administrative remedies under the FCRA is inapplicable in this context. *Id.* at 12.

The FCRA "provides a private right of action for a violation of any Florida discrimination statute." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1204 (11th Cir. 2007). Before a claimant may bring a civil action under the FCRA, he or she must exhaust specific administrative procedures set forth in Florida Statutes Section 760.11. *See id.* at 1205. These procedures require claimants to first file a complaint with the Florida Commission on Human Relations ("Commission" or "FCHR") within 365 days of the alleged violation. Fla Stat. § 760.11(1). If the Commission determines that no reasonable cause exists to believe that unlawful discrimination occurred, the claimant may request an administrative hearing before an Administrative Law Judge ("ALJ"). *Id.* § 760.11(7). After the hearing, the ALJ issues a recommended order to the Commission, which then issues a final order by adopting, rejecting, or modifying the recommended order. *Id.* The claimant may not file a civil action unless the Commission, in its final order, determines that the FCRA has been violated. *See id.*; *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 895 (Fla. 2002). If the final order issued by the Commission determines that the FCRA has not be violated, the claimant has 30 days to seek judicial review pursuant to Florida Statutes Section 120.68, which provides for review of adverse agency actions. Fla. Stat. §§ 760.11(13), 120.68(2)(a).

Plaintiffs do not allege exhaustion of their administrative remedies pursuant to the FCRA (*see generally* Am. Compl.), and review of their Response to the Motion makes clear they did not exhaust or attempt to exhaust their administrative remedies. Therefore, Count I of the Amended Complaint is due to be dismissed on this basis. *See Gillis v. Sports Authority, Inc.*, 123 F. Supp. 2d 611, 615 (S.D. Fla. 2000) ("Prior to filing suit for alleged violations of the FCRA, a plaintiff must first exhaust his administrative remedies under the FCRA by filing a timely charge of discrimination with the FCHR."); *Horace v. ARIA*, No. 23-12414, 2024 WL

1174398, at *3 (11th Cir. Mar. 19, 2024) (affirming district court's dismissal with prejudice of *pro se* plaintiff's gender discrimination claims under the FCRA for failure to exhaust administrative remedies).

Plaintiffs' argument that the exhaustion requirement does not apply to their FCRA claim is unavailing. Plaintiffs cite no legal support for this proposition, and this Court is unaware of any applicable exception to the exhaustion requirement before a lawsuit can be initiated under the FCRA. Accordingly, Plaintiffs have not stated a viable FCRA claim.[3]

### 2.  Count II – Fraudulent Misrepresentation.

In Count II of the Amended Complaint, Plaintiffs assert a claim for fraudulent misrepresentation. Am. Compl. ¶¶ 107–12. Plaintiffs allege that the Defendants "engaged in a systematic campaign of false representations to the Plaintiffs regarding the NuroChek device." *Id.* ¶ 108. Plaintiffs further allege that the Defendants "misrepresented to the CDRH the nature of Plaintiffs' review process, falsely suggesting that the Plaintiffs had led them to believe that the CDRH was directly reviewing the NuroChek's 510(k) application before its

---

[3] The Court notes that RQM+'s second argument, that the alleged conduct that Plaintiffs' FCRA claim targets (*i.e.*, exclusion of a specific demographic group from a medical device's safety testing) is not an activity that falls within the statute's ambit, is also well taken. The FCRA provides remedies for unlawful discrimination in the "areas of education, employment, or public accommodations." Fla. Stat. § 760.07. Plaintiffs fail to demonstrate how the alleged misconduct in this case fits into any of these categories. And to the extent Plaintiffs rely on the FPBRR, they offer no authority for use of FCRA to enforce purported violations of the FPBRR, and that statute expressly provides that it "cannot be used in civil actions." *Vazzo v. City of Tampa*, No. 8:17-CV-2896-T-02AAS, 2019 WL 1048294, at *16 (M.D. Fla. Jan. 30, 2019), report and recommendation adopted *sub nom. Vazzo v. City of Tampa, Fla.*, No. 8:17-CV-2896-T-02AAS, 2019 WL 1040855 (M.D. Fla. Mar. 5, 2019); *see* Fla. Stat. § 381.026(3) ("This section shall not be used for any purpose in any civil or administrative action and neither expands nor limits any rights or remedies provided under any other law"). That language demonstrates that "the Florida Legislature did not intend to create a private right of action under the Florida Patient's Bill of Rights and Responsibilities" and Plaintiff "cannot bring a claim under that statute." *Vazzo*, 2019 WL 1048294, at *16.

actual submission date." *Id.* According to Plaintiffs' allegations, these "fraudulent claims . . . played a critical role in influencing the CDRH's decision-making process" and "were a significant factor in the CDRH's eventual decision to withdraw ADAS's accreditation as a Third-Party Review organization." *Id.*

RQM+ argues that Plaintiffs have failed to plead their fraud claims with the requisite particularity pursuant to Federal Rule of Civil Procedure 9(b). *See* Mot. at 25. Specifically, RQM+ contends that Plaintiffs fail to identify the basic "who, what, where, and when" as required when pleading fraud claims. The undersigned agrees.

"Under Florida law, fraudulent misrepresentation requires: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Hearn v. Int'l Bus. Machs.*, 588 F. App'x 954, 956–57 (11th Cir. 2014) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Fraudulent misrepresentation claims must be pled with particularity. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotations omitted). To meet this standard, a plaintiff needs to "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement[s]; (3) the content and manner in which the statements misled the plaintiff; and (4) what [the defendant] gain[ed] by the alleged fraud." *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citation omitted). Furthermore, Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud. *See U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b)

12

is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [a] conclusory fashion . . . . [A] plaintiff is not expected to actually *prove* his allegations," [but it must offer more than] "mere conjecture.").

Here, Plaintiffs' fraudulent misrepresentation allegations lack the particularity required by Rule 9(b) and fail under Rule 12(b)(6), as well. First, the allegations are not specific to any particular Defendant but, instead, address the Defendants jointly. Because the Amended Complaint lacks any individualized allegations for each Defendant, it fails to satisfy even the basic pleading requirements of Rule 8(a). *See Johns Manville*, 287 F. App'x at 86 ("In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient.").

In addition, the Amended Complaint does not identify any specific fraudulent statements made by any of the Defendants. Plaintiffs allege that the Defendants made false representations to Plaintiffs regarding the NuroChek device's "capabilities, particularly its effectiveness on individuals with dreadlocked hairstyles, a common trait among African Americans" which "led the Plaintiffs to erroneously endorse the device for CDRH approval." Am. Compl. ¶¶ 108, 112. This general allegation does not identify "what" exactly the Defendants allegedly told Plaintiffs that falsely represented the NuroChek device's effectiveness during the regulatory approval process, nor does it indicate which Defendant is responsible for making the statement and when. Plaintiffs also allege that the Defendants "misrepresented to the CDRH the nature of Plaintiffs' review process, falsely suggesting that the Plaintiffs had led them to believe that the CDRH was directly reviewing NuroChek's 510(k) application before its actual submission date, March 18, 2020." *Id.* This allegation,

though arguably more substantive than the first, still fails to satisfy Rule 9(b)'s requirements as it does not specify "who" made the allegedly false statements, "when" they said them, or "where" they were said. *See Johns Manville*, 287 F. App'x at 86 (discussing Rule 9(b)'s particularity requirements in the context of fraudulent misrepresentation).

In their Response to the Motion, Plaintiffs contend their fraudulent misrepresentation allegations meet Rule 9(b)'s requirements. Resp. at 13. Plaintiffs argue they have "meticulously detailed" the fraudulent actions made by RQM+ by identifying key personnel, like Ms. Komiyama, responsible for the alleged misrepresentations and specifying "the content of their fraudulent statements." *Id.* Based on a review of the Amended Complaint, the undersigned disagrees.

In the general factual allegations in the Amended Complaint, which span 34 pages of the 51-page pleading, Plaintiffs allege that, in February 2020, Ms. Komiyama communicated with the CDRH via email and implied that Plaintiffs "had deliberately misrepresented the reviewer of the NuroChek 510(k) application to the Defendants, suggesting it was [the] CDRH instead of [Plaintiff] ADAS." Am. Compl. ¶¶ 39, 43. Plaintiffs incorporate all general factual allegations in each count, including in their fraudulent misrepresentation claim. *See id.* ¶ 107. However, Plaintiffs fail to re-plead specific factual allegations in each count that support those counts. The general allegations pertaining to Ms. Komiyama and her alleged misconduct are nowhere mentioned within the specific allegations regarding the fraudulent misrepresentation claim in the Amended Complaint. *See* Am. Compl. ¶¶ 108–12. And even incorporating the general allegations into the Count, it falls short of the particularized allegations required by Rule 9(b).

14

Contrary to Plaintiffs' contention, the allegations in the Amended Complaint pertaining to fraudulent misrepresentation are anything but "meticulously detailed." Plaintiffs fail to point to a specific false statement made by any of the Defendants to support the first element of a fraudulent misrepresentation claim. Accordingly, having thoroughly reviewed the allegations in the Complaint, accepting them as true and giving due deference to Plaintiffs, the fraudulent misrepresentation claim is due to be dismissed for failure to satisfy the particularity requirements of Rule 9(b).

### 3. Count IV – Tortious Interference With Business Relations.

In Count IV, Plaintiffs assert a claim against all of the Defendants for tortious interference with business relations. Am. Compl. ¶¶ 118–24. Plaintiffs allege they "maintained a longstanding and beneficial business relationship with the CDRH, a fundamental aspect of which was ADAS's accreditation as a third-party review organization." *Id.* ¶ 119. Plaintiffs allege the Defendants "were fully cognizant of the established business relationship between the Plaintiffs and the CDRH" based on the Defendants' "direct engagement with the Plaintiffs for the 510(k) third-party review of the NuroChek device." *Id.* ¶ 120. Plaintiffs further allege that the Defendants "made misrepresentations and unfounded accusations about the Plaintiffs' review process for the NuroChek device" to the CDRH to "undermine the professional reputation and standing of the Plaintiffs as an accredited third-party review organization." *Id.* ¶ 121. Lastly, Plaintiffs allege the Defendants' "deliberate interference and unethical actions led to the loss of ADAS's accreditation with the CDRH." *Id.* ¶ 124.

To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege: "(1) the existence of a business relationship, not necessarily

evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the

defendant; (3) an intentional and unjustified interference with the relationship by the

defendant; and (4) damage to the plaintiff as a result of the breach of the relationship."

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

In the Motion, RQM+ does not dispute the existence of a business relationship

between Plaintiffs and the CDRH nor its knowledge of such relationship. RQM+'s challenge

to Plaintiffs' tortious interference claim is based on the third element: whether RQM+ had a

justification or privilege to interfere with the relationship between Plaintiffs and the CDRH.

*See* Mot. at 27. More specifically, RQM+ argues that Plaintiffs cannot assert an actionable

tortious interference claim because Plaintiffs' allegations make clear that Plaintiffs and the

Defendants were *all* part of a business relationship for obtaining regulatory approval for the

NuroChek device. Mot. at 27. In other words, RQM+ was not a stranger to the business

relationship and, therefore, Plaintiffs have not sufficiently alleged that RQM+'s interference

with Plaintiffs' business relationship with the CDRH was "unjustified."

Under Florida law, an interference is unjustified where the interfering defendant is "a

stranger to the business relationship." *Treco Int'l. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289

(S.D. Fla. 2010) (King, J.) (quoting *Salit v. Ruden*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999));

*see also Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1338 (S.D. Fla.

2007) (McAliley, Mag. J.) ("Under Florida law, a claim for tortious interference cannot lie

where the alleged interference is directed at a business relationship to which the defendant is

a party."); *Special Purpose Accounts Receivable Co-op v. Prime One Co.*, 125 F. Supp. 2d 1093,

1103–04 (S.D. Fla. 2000) (reiterating the well-established rule that "[w]hether the defendant

interferes with a contractual or business relationship, that defendant must be a third party or

16

a stranger to the business relationship"). An interfering defendant is not a "stranger," however, "if the defendant has any beneficial or economic interest in, or control over, that relationship." *Treco Int'l*, 706 F. Supp. 2d at 1289 (emphasis and citation omitted). This includes when a defendant has a "supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).

As noted above, RQM+ argues that it is not a stranger to Plaintiffs' business relationship with the CDRH because its involvement (or alleged interference) concerns the "joint effort" by Plaintiffs and the Defendants to secure regulatory approval for the NuroChek device. *See* Mot. at 27. Put differently, RQM+ contends it has a beneficial or economic interest in the relationship between Plaintiff and the CDRH. Plaintiffs contend that RQM+ "was not a party to the business relationship between the Plaintiffs and the FDA"[4] but instead, "acted as an external entity, engaging in actions that intentionally disrupted this established relationship." Resp. at 14–15. RQM+ replies that Plaintiffs are attempting to re-allege in their Response what they failed to allege in the Amended Complaint. Reply at 14.

In the Amended Complaint, Plaintiffs specifically allege that the Defendants, including RQM+, had a "*direct* engagement with Plaintiffs for the 510(k) third-party review of the NuroChek device" and "interact[ed] with the Plaintiffs during the 510(k) review process, including communication about the device's testing, submission details, and compliance queries, [which] clearly indicate their understanding of the Plaintiffs'[ ] accredited

---

[4] In the Amended Complaint, Plaintiffs allege the business relationship at issue was with the CDRH, but in their Response, they refer only to their relationship with the FDA generally. Given that the CDRH is an arm of the FDA, it is a distinction without a difference for purposes of this analysis.

role in the CDRH's regulatory framework." Am. Compl. ¶ 120 (emphasis added). And as to RQM+ in particular, Plaintiffs allege that RQM+'s objective, by way of Ms. Komiyama, "was to facilitate the CDRH approval of the NuroChek device." *Id.* ¶ 6. Plaintiffs include detailed allegations regarding Ms. Komiyama's interactions with the CDRH and Plaintiffs. *See id.* ¶¶ 62–64. Ultimately, it is clear from Plaintiffs' allegations that Plaintiffs and Defendants were involved in the relationship with the CDRH toward the same goal, approval of the NuroChek 510(k) application. Based on these allegations, it cannot be said that the Defendants, and in particular RQM+, did not have a beneficial or economic interest in or control over Plaintiffs' relationship with the CDRH. Therefore, RQM+ was not a stranger to that relationship.

Plaintiffs' allegations in the Amended Complaint fail to demonstrate that RQM+ (or any of the Defendants) were third parties or strangers to the business relationship at issue. Accordingly, Plaintiffs' tortious interference claim is due to be dismissed.

### 4. Count V – Violation Of The Florida Security of Communications Act.

In Count V of the Amended Complaint, Plaintiffs allege Defendants violated the Florida Security of Communications Act ("FSCA"), commonly referred to as the Florida Wiretap Act. *See* Am. Compl. ¶¶ 125–32. This claim is predicated on the alleged recording of a February 13, 2020 teleconference among the parties and the CDRH that was "essential to the regulatory review process of the NuroChek device." *Id.* Plaintiffs allege the Defendants unlawfully recorded the teleconference "without the knowledge or consent of the Plaintiffs" and "subsequently us[ed] or disclos[ed] its contents" in violation of the FSCA. *Id.* ¶¶ 126–27. Plaintiffs further allege the Defendants' action of recording the call without obtaining the necessary consent from all parties was a "blatant violation of the legal standards set forth in

both Florida and Maryland." *Id.* ¶ 128. The specific details of the subject teleconference are

alleged in the Amended Complaint as follows:

> On February 13, 2020, at 4:30 PM ET, a private teleconference took place
> involving all parties, hosted by CDRH officials using their Agency's telephonic
> conference system in Silver Spring, Maryland. Similar to Florida, Maryland
> mandates that all parties consent before a call can be recorded. During this
> teleconference, both the Plaintiffs and the CDRH had a reasonable expectation
> of privacy and confidentiality, a standard assumption for such critical
> discussions. However, the Defendants recorded this teleconference without
> obtaining the necessary prior permission from either the Plaintiffs or the
> CDRH, breaching the legal requirement for consent in both states . . . .

*Id.* ¶ 51. Again, these allegations are not specific to any particular Defendant but, instead,

address the Defendants collectively. As with the other causes of action, Plaintiffs' FSCA claim

is based on generalized allegations and fails for that reason alone. *See Johns Manville*, 287 F.

App'x at 86 ("In a case with multiple defendants, the complaint should contain specific

allegations with respect to each defendant; generalized allegations "lumping" multiple

defendants together are insufficient.").

      RQM+ argues that Plaintiffs' FSCA claim fails because Plaintiffs had no reasonable

expectation of privacy during the subject teleconference. Mot. at 28. In support, RQM+ cites

a case from Florida's Third District Court of Appeal in which the court found that there is no

reasonable expectation of privacy for business-related conference calls. *Cohen Bros., LLC v. ME

Corp.*, S.A., 872 So. 2d 321, 324–25 (Fla. 3d DCA 2004) ("[W]e don't believe that society

would recognize, as reasonable, that such an expectation of privacy exists in a conference call,

specially where the call is held to conduct the business of the company.").

      In their Response, Plaintiffs counter that "[t]he February 13, 2020, teleconference was

not a typical business meeting but a specific and confidential regulatory discussion involving

the NuroChek device's safety and efficacy." Resp. at 16. Plaintiffs claim that "[t]he purpose

of this call was not to conduct routine business of the company, but to seek FDA recommendations regarding safety testing for the NuroChek device." *Id.* Plaintiffs further argue that "[s]uch communications, especially during the approval process of a new medical device, are not normally public information and are generally considered to be private, given their sensitive nature and potential impact on public health." *Id.* Plaintiffs maintain that they "had a reasonable expectation that their conversation with the FDA would remain private." *Id.*

The FSCA states, in part, that "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of [sections] 934.03–934.09 shall have a civil cause of action against any person or entity who intercepts, discloses, or uses, or procures any other person or entity to intercept, disclose, or use, such communications . . . ." Fla. Stat. § 934.10(1). The elements of a cause of action under the FSCA are: (1) the person whose communication was intercepted must be a Florida resident, or the interception must have occurred in Florida; (2) the person whose communication was intercepted had a subjective expectation of privacy in the intercepted communication; and (3) society must recognize the expectation of privacy as reasonable. *See Cohen Bros.*, 872 So. 2d at 324 (citing *State v. Smith*, 641 So. 2d 849, 852 (Fla. 1994)).

An oral communication cannot be intercepted and disclosed without the consent of the parties *if* there is a reasonable expectation of privacy which is recognized by society. *See Jatar v. Lamaletto,* 758 So. 2d 1167, 1169 (Fla. 3d DCA 2000); *see also Smith*, 641 So. 2d at 852 ("[F]or an oral conversation to be protected under Section 934.03 the speaker must have an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable."). Florida's Supreme Court has explained that society does not recognize an

absolute right of privacy in a party's office or place of business. *See Morningstar v. State,* 428 So. 2d 220, 221 (Fla. 1983) (finding that although defendant may have had reasonable expectation of privacy in his private office, that expectation was not one which society was willing to accept as reasonable or willing to protect); *Jatar*, 758 So. 2d at 1169 ("Society is willing to recognize a reasonable expectation of privacy in conversations conducted in a private home. However, this recognition does not *necessarily* extend to conversations conducted in a business office.").

Based on a review of Plaintiffs' allegations, accepting them as true, there is not enough information in the Amended Complaint for the FSCA claim to survive Rule 8(a). It is not clear which Defendant(s) were responsible for causing the recording nor who else was on the call, which is relevant to whether there was a legitimate expectation of privacy. Therefore, Count V is also due to be dismissed.

Defendants also argue that an alleged violation of the FSCA is not sufficient to establish specific jurisdiction over a defendant under the Florida long-arm statute. This Court agrees. *See Equitrac Corp. v. Delaney*, No. 09-60629-CIV, 2009 WL 10667046, at *5 (S.D. Fla. Aug. 31, 2009) (Altonaga, J.) (concluding district court lacks specific jurisdiction under the Florida long-arm statute for alleged violations of the FSCA). Thus, as discussed below, even if Plaintiffs stated a claim for violation of the FSCA, a violation of that statute is not a basis for specific personal jurisdiction under the Florida long-arm statute.

### B. Whether RQM+ Is Subject To Personal Jurisdiction In This Court.

As explained above, this Court's consideration of whether personal jurisdiction exists is undertaken in light of the claims presented. Although this Court has already determined that Plaintiffs fail to adequately state any claims against RQM+, even if they could state their

claims, by amending their pleading, Plaintiffs have not shown that RQM+ is subject to personal jurisdiction. In the Motion, RQM+ avers that (1) it is not subject to general jurisdiction because it is not "at home" in Florida as it has no office in the state and is not registered to do business in Florida; (2) Plaintiffs have not alleged sufficient factual allegations in the Amended Complaint to establish specific jurisdiction; (3) the exercise of personal jurisdiction over RQM+ would not comport with due process; and (4) RQM+ has not consented to personal jurisdiction in this Court. *See generally* Mot. at 9, 11–20. In support of the Motion, RQM+ submitted the Declaration of Julia Wnek, the Chief Financial Officer for RQM+ Corp., which is the sole member of RQM+. [ECF No. 11-1 ("Wnek Decl.")]. RQM+ also submitted the Supplemental Declaration of Julia Wnek with its Reply. [ECF No. 21-1 ("Wnek Supp. Decl.")].

The Florida long-arm statute provides two bases for the exercise of personal jurisdiction over a nonresident defendant: specific and general jurisdiction. *PVC Windoors*, 598 F.3d at 808. As the Eleventh Circuit has explained, a nonresident defendant may be subject to personal jurisdiction under Florida's long-arm statute in one of two ways:

> First, a defendant is subject to "*specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida"—for conduct specifically enumerated in the statute. Second, a defendant is subject to "*general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida."

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015)); *see also* Fla. Stat. §§ 48.193(1)(a) and (2).

If the nonresident defendant is found to be subject to specific or general jurisdiction under Sections 48.193(1)(a) or (2), the Court next determines whether the exercise of personal jurisdiction comports with due process under the United States Constitution. *Waite*, 901 F.3d at 1312. The benchmark of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the "random, fortuitous, or attenuated" contacts it makes by interacting with other persons affiliated with the state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Plaintiffs claim RQM+ is subject to both general and specific jurisdiction.[5]

### 1.  General Jurisdiction Under Florida's Long-Arm Statute.

Under Florida's long-arm statute, a court has general jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Such activity can be "wholly interstate, intrastate, or otherwise." *Id.* Florida courts have defined the term "substantial and not isolated activity" as used in Section 48.193(2) to mean "continuous and systematic general business contact" with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing

---

[5] In their Response, Plaintiffs conflate the requirements for general and specific jurisdiction. *See, e.g.*, Resp. at 5 (indicating that "RQM+'s continuous and systematic contacts with Florida, satisfy[ ] the requirements for *specific* jurisdiction").

*Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). General jurisdiction thus arises from a nonresident "defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Consol Dev. Corp.*, 216 F.3d at 1292. Generally, the contacts required to establish general jurisdiction are quite rigorous and "must be especially pervasive and substantial" to satisfy Section 48.193(2). *See In re Farmland Indus., Inc.*, No. 3:05–CV–587, 2007 WL 7694308, at *3 (M.D. Fla. Mar. 30, 2007). Therefore, the exercise of general jurisdiction is only proper when the nonresident defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citations omitted). Additionally, "a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 132 (citations omitted).

In the Amended Complaint, Plaintiffs broadly allege that this Court has jurisdiction over the Defendants, pursuant to Florida Statute § 48.193, because the Defendants "have engaged in significant business and regulatory activities in Florida." Am. Compl. ¶ 14. According to Plaintiffs' allegations, "the origins of this lawsuit are rooted in various actions by the Defendants, such as forming contractual agreements, exchanging emails and engaging in phone communications with Plaintiffs, initiating advertising campaigns, and conducting multiple business transactions within Florida." *Id.* Notably, Plaintiffs' jurisdictional allegations in support of general jurisdiction are not specific to any particular Defendant but, instead, address the Defendants collectively.

Through the Declaration of Julia Wnek, RQM+ states that: (1) it is a Pennsylvania limited liability company with its headquarters in Pennsylvania; (2) its sole member, RQM+ Corp, is a Delaware corporation with its principal place of business in Pennsylvania; and (3) it has not operated, conducted, engaged in, or carried on any business or business venture within Florida. Wnek Decl. ¶¶ 1, 4–9.

In their Response, Plaintiffs argue that RQM+ is subject to general jurisdiction for three reasons: (1) RQM+ indicated Miami-Dade County as its county of residence in the civil cover sheet; (2) RQM+ has a member company that is headquartered in Florida; and (3) RQM+ has high-level executives located in Florida. As set forth below, each of these alleged grounds for general jurisdiction is unavailing.

### a. Scrivener's Error In Civil Cover Sheet.

First, Plaintiffs point out that the civil cover sheet filed by RQM+ with the Notice of Removal lists Miami-Dade as the county of residence (*see* ECF No. 1-1) and argue that this "is significant as it implies RQM+'s presence and business operations within the state of Florida." [ECF No. 18 at 4]. In its Reply, RQM+ avers that the original civil cover sheet filed in this action had a minor scrivener's error and that it has since filed a corrected civil cover sheet that accurately lists "Dauphin, Pennsylvania" as RQM+'s county of residence. Reply at 8; *see also* [ECF No. 15-1]. Importantly, RQM+'s assertion is consistent with Ms. Wnek's Declaration, which states that RQM+ is a Pennsylvania limited liability company with its headquarters in Monroeville, Pennsylvania, and that RQM+ has no offices in Florida. *See* Wnek Decl. ¶ 5. RQM+ further argues that Plaintiffs' contention based on the civil cover sheet has no merit because courts do not consider "allegations on a civil cover sheet." [ECF No. 21 at 7]. RQM+ also points to Local Rule 3.3, which provides, in relevant part, that the

25

civil cover sheet "is solely for administrative purposes, and matters appearing only on the civil cover sheet *have no legal effect in the action*." S.D. Fla. L.R. 3.3 (emphasis added).

This Court agrees with RQM+ that the information contained in a civil cover sheet is not determinative of this Court's personal jurisdiction over a nonresident defendant. *See, e.g.*, *Gordon v. Northwestern Mutual Life Ins. Co.*, No. 2:16-cv-583, 2017 WL 3279160, at *1 (M.D. Fla. Apr. 18, 2017) ("To the extent that plaintiff is relying on the reference to defendant as a 'Wisconsin corporation' in the caption of the case, 'the caption is not determinative as to the identity of the parties to the action or the district court's personal jurisdiction over the defendant or its subject matter jurisdiction.'"). Further, RQM+ has corrected the error by filing a revised civil cover sheet (*see* ECF No. 15-2) that is consistent with the Declaration submitted in support of the Motion. Plaintiffs did not submit evidence to rebut the information in Ms. Wnek's Declaration regarding RQM+'s headquarters and principal place of business.

For these reasons, this Court rejects Plaintiffs' claim that the erroneous civil cover sheet originally filed by RQM+ is a basis to establish personal jurisdiction over RQM+.

### b.  Florida Company "RQM Corp."

Plaintiffs next contend that "RQM Corp," a Florida company, is a "member company" of Defendant RQM+, thus "suggesting substantial ties to Florida." Resp. at 5. In support of this contention, Plaintiffs attach a 2023 Annual Report filed with the Florida Secretary of State by an entity named "RQM Corporation," which, according to the Report, has a Miami, Florida address. [ECF No. 18 at 26]. The Annual Report was submitted by Roberto J. Quiros, who is listed as President of "RQM Corporation." *Id.* Defendant RQM+ avers that the state filing lists a different company altogether that is entirely unrelated to it. *See* Reply at 8; Wnek Supp. Decl. ¶¶ 5–6. For support, RQM+ points to the Supplemental

Declaration of Julia Wnek in which Ms. Wnek states that Mr. Quiros has no connection to Defendant and no connection to "RQM+ Corporation" (Defendant's sole member) and that the "similarity between [Mr. Quiros's] company's name and RQM+ is *coincidental*." Reply at 8; Wnek Supp. Decl. ¶ 6.

Plaintiffs have not presented competent evidence to rebut the evidence submitted by RQM+ or to link "RQM Corporation," a Florida corporation owned by non-party Roberto Quiros, with Defendant RQM+. The unrebutted evidence before this Court indicates that RQM+ Corp, Defendant RQM+'s sole member, is a Delaware corporation with its principal place of business in Pennsylvania. Wnek Decl. ¶ 5. Plaintiffs' attempt to refute this assertion by pointing to an unverified state filing pertaining to an unrelated company is insufficient to meet their burden to establish personal jurisdiction over RQM+ in this action.

### c. <u>RQM+ Executives In Florida</u>.

Finally, Plaintiffs argue that "a substantial number of RQM+'s high-level executives and decision-makers are located in Florida." Resp. at 5. In support of this argument, Plaintiffs attach the LinkedIn profile of Robert Pepper, in which Mr. Pepper is listed as Vice President of Marketing for RQM+ with a location in Naples, Florida. [ECF No. 18 at 28]. Plaintiffs contend that RQM+'s "concentration of senior leadership in Florida indicates that key corporate decisions are likely made in the state." Resp. at 5.

RQM+ refutes these assertions by pointing, once again, to the Supplemental Declaration of Julia Wnek submitted in support of the Reply. [ECF No. 21-1]. According to Ms. Wnek's Supplemental Declaration, Robert Pepper is a former employee of RQM+ who worked remotely from Florida for approximately ten months from November 2022 to September 2023. Wnek Supp. Decl. ¶ 8. As stated in the Supplemental Declaration, although

Mr. Pepper served as "Vice President" of marketing, he did not hold a position of executive leadership within RQM+ and never had the authority to make executive-level decisions. *See id.* ¶¶ 8–13. Furthermore, as stated in the Supplemental Declaration, RQM+ has no offices in Florida and while RQM+ has some employees and contractors who work remotely from Florida, "they only constitute a small fraction of RQM+'s workforce" and "[n]one of these remote employees manage or control the operations of RQM+." *Id.* ¶ 7. Plaintiffs do not offer competent evidence to rebut these statements. Based on the unrebutted evidence submitted by RQM+, this Court finds that Plaintiffs have not demonstrated general jurisdiction based on RQM+ having "high-level executives and decision-makers" in Florida.

In sum, Plaintiffs have not demonstrated that this Court may exercise personal jurisdiction over RQM+ under the general jurisdiction provision of Florida's long-arm statute, Section 48.193(2).

## 2.  Specific Jurisdiction Under Florida's Long-Arm Statute.

This Court next considers whether Plaintiffs have established that RQM+ is subject to specific jurisdiction. Specific jurisdiction refers to "jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *PVC Windoors*, 598 F.3d at 808 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.27 (11th Cir. 2009)).

In the Amended Complaint, Plaintiffs generally allege that the Defendants are subject to specific jurisdiction because they: (1) carried on a business venture in Florida; and (2) committed tortious acts in Florida. *See* Am. Compl. at ¶¶ 14–15. Again, these allegations pertain to all Defendants named in the Amended Complaint collectively. The Court addresses each basis, in turn, as to Defendant RQM+.

### a.  <u>Carrying On A Business Venture In Florida.</u>

"In order to establish that a defendant is 'carrying on [a] business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech.*, 218 F.3d at 1249).[6]

Here, Plaintiffs have not met their burden of alleging sufficient jurisdictional facts to establish that RQM+ is "carrying on a business" for purposes of the long-arm statute. The Amended Complaint does not provide any factual allegations showing that RQM+ has carried on a general course of business activity in Florida for pecuniary benefit. In the Wnek Declarations, Ms. Wnek states that RQM+ does not direct its operations from Florida, has no offices in Florida, and although it has some clients in Florida, "they constitute a small fraction of RQM+s business portfolio." *See* Wnek Decl. at ¶¶ 6–8, 10. In their Response, Plaintiffs do not specifically address RQM+'s arguments on this issue, and they fail to rebut the Wnek Declarations, which demonstrate that RQM+ has not and does not carry on a business venture in Florida for purposes of the long-arm statute.

Moreover, Plaintiffs' broad allegation in the Amended Complaint that all of the Defendants, collectively, conducted "multiple business transactions within Florida,"

---

[6] Relevant factors to consider include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue obtained from those clients. *Id.* (citations omitted). "For this provision to apply, there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Valencia v. Horizon Att'ys & Couns. at Law PLC*, No. 17-cv-61205, 2017 WL 7792619, at *3 (S.D. Fla. Dec. 8, 2017) (Dimitrouleas, J.) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).

including "exchanging emails and engaging in phone communications with the Plaintiffs," is insufficient to establish that RQM+ has carried on a business venture in Florida. *See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 784 (11th Cir. 2014) ("We have held that 'telephonic and electronic communications [made from elsewhere] into Florida' do not constitute carrying on a business venture in Florida, even when those phone calls were incident to some economic activity.") (citing *Horizon Aggressive Growth*, 421 F.3d at 1167)); *see also Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996) (holding that making phone calls from Canada to Florida did not qualify as carrying on a business venture in Florida).

Accordingly, based on the record evidence before this Court, Plaintiffs have not established that specific jurisdiction is appropriate pursuant to Section 48.193(1)(a)(1) of Florida's long-arm statute based on RQM+ purportedly carrying on a business venture in Florida.

### b. Committing A Tortious Act In Florida.

Plaintiffs also contend that this Court may exercise specific jurisdiction over RQM+ based on it having allegedly committed a tortious act that caused injury in this State. Fla. Stat. § 48.193(1)(a)(2). The Eleventh Circuit has interpreted Section 48.193(1)(a)(2) broadly to cover nonresident defendants who commit tortious acts outside the state that cause injuries inside the state. *See Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) ("We have consistently held that, under Florida law, a nonresident defendant commits a tortious act in Florida by performing an act outside the state that causes injury within Florida.") (citations omitted); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216–17 (11th Cir. 1999); *see also Delaney*, 2009 WL 10667046, at *8 ("Absent a controlling decision by the Florida Supreme

30

Court, this Court is bound by Eleventh Circuit precedent, which broadly interprets subsection [(1)(a)(2)] to apply when injury occurs in Florida." (citations omitted). Thus, a nonresident defendant need not be physically present in Florida to commit a tortious act within this state. *See Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020); *Wendt*, 822 So. 2d at 1260.

In the Amended Complaint, Plaintiffs broadly allege that all of the Defendants are subject to specific jurisdiction under Section 48.193(1)(a)(2) because they committed tortious acts which purportedly caused harm to Plaintiffs in Florida, including "Racial Discrimination under the Florida Civil Rights Act, Fraudulent Misrepresentation, Tortious Interference with Business Relations, and Violation of the Florida Security of Communications Act." Am. Compl. at ¶ 15. Again, these allegations are made as to all of the Defendants collectively.

As discussed above, Plaintiffs' claims in the Amended Complaint for racial discrimination under the FCRA, fraudulent misrepresentation, and tortious interference with business relations are inadequate and due to be dismissed for failure to state a claim. As such, they cannot form a basis or specific jurisdiction under Section 48.193(1)(a)(2). Likewise, this Court finds, as discussed above, that Plaintiffs fail to satisfy the basic pleading requirements of Rule 8(a) with respect to their claims for violation of the FSCA. Even assuming Plaintiffs are able to state a claim for violation of the FSCA, this Court finds that violation of the FSCA is not a basis for asserting personal jurisdiction. *See Delaney*, 2009 WL 10667046, at *8 (undertaking jurisdictional analysis as to the remaining count after all other claims were dismissed for failure to state a claim).

On this question, the reasoning in *Equitrac Corporation v. Delaney*, No. 09-60629, 2009 WL 10667046, at *8–12 (S.D. Fla. Aug. 31, 2009) (Altonaga, J.), particularly persuasive. In that case, the defendant, a Canadian citizen who worked for a Canadian company under a

Canadian employment agreement and who recorded telephone calls with a Florida citizen while the defendant was in Canada, argued that the district court lacked personal jurisdiction over him. *Id.* at *8. After analyzing the relevant case law, the district court concluded that it lacked specific jurisdiction over the nonresident defendant under the Florida long-arm statute based on the defendant's alleged violations of the FSCA. *Id.* at * 11–12. The district court also noted the defendant's uncontested assertion that Canadian law permits the recording of telephonic conversations as long as one party consents. *Id.* at *12.

Like the defendant in *Delaney*, the fact that RQM+ allegedly recorded a single teleconference when it knew that Plaintiffs were in Florida does not transform the violations of the Florida statute, if they indeed are violations, into tortious conduct that subjects RQM+ to jurisdiction under subsection (1)(a)(2) of the Florida long-arm statute. Furthermore, this Court notes that California permits the recording of telephone conversations as long as one party consents thereto. *See, e.g.*, *Rodriguez v. Aquatic Sales Sols. LLC*, 753 F. Supp. 3d 1208, 1226 (C.D. Cal. 2024) (a party to a conversation can record it without the other party's knowledge without incurring liability under the California Invasion of Privacy Act) (citations omitted); *Cf. Kountze*, 996 So. 2d at 252 ("We are admittedly influenced by the fact that the act was not illegal in the state where the defendant actually committed it and was not illegal under the federal law that would apply to interstate telephone calls."). Plaintiffs do not indicate which Defendant caused the recording, but if that Defendant was located in California, as Ms. Komiyama indicates she was,[7] then Plaintiffs would likely be unable to demonstrate that the Defendant committed a tort in that state based on the FSCA.

---

[7] The Declaration of Ms. Komiyama indicates that she participated in the subject teleconference from her office in California. *See* Komiyama Decl. at ¶ 16. Notably, the allegations in Plaintiffs' Amended Complaint do not specify the participants of the February

Accordingly, Plaintiffs have not established that specific jurisdiction is appropriate pursuant to Section 48.193(1)(a)(2) of Florida's long-arm statute for RQM+'s alleged violations of the Florida Security of Communications Act.

For the above reasons, Plaintiffs have not pled sufficient facts to establish specific personal jurisdiction over RQM+.

### C. Due Process.

In any event, even if RQM+ were subject to specific personal jurisdiction under Florida's long-arm statute, Plaintiffs have not shown that personal jurisdiction over RQM+ comports with the Due Process Clause of the Fourteenth Amendment. To determine whether a court's assertion of personal jurisdiction complies with due process, a court must assess (1) whether the nonresident defendant has established sufficient "minimum contacts" with the forum and (2) whether the exercise of jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *See Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994); *see also Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

RQM+ argues that the exercise of personal jurisdiction over it would not comport with due process. Mot. at 19. RQM+ asserts that while it may have conducted *some* business in Miami-Dade County, Plaintiffs have not sufficiently alleged facts to establish that RQM+ has maintained "continuous and systematic" contacts in Florida such that the exercise of personal jurisdiction does not offend notions of fair play and substantial justice. *Id.* The undersigned has conducted a careful review of Plaintiffs' Response and notes that Plaintiffs do not address RQM+'s constitutional argument therein. *See generally* Resp. Plaintiffs have thus abandoned

---

13, 2020 teleconference. Instead, Plaintiffs, yet again, broadly allege that a "private teleconference took place involving all parties, hosted by CDRH officials using their Agency's telephonic conference system in Silver Spring, Maryland." Am. Compl. ¶ 51.

that argument. *See Pecora v. Prime Sec. All., Inc.*, No. 20-cv-24478, 2022 WL 19302229, at *7 (S.D. Fla. Mar. 3, 2022) ("Failure to respond to an argument . . . constitutes abandonment of that argument[.]"). Nevertheless, given Plaintiffs' *pro se* status, the undersigned has also undertaken a review of the constitutional issue.

## 1. **Minimum Contacts**.

The Eleventh Circuit has held that to establish sufficient minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the forum must satisfy three criteria. *See Sculptchair*, 94 F.3d at 631. First, the defendant's contacts must be related to the plaintiff's cause of action. *See id.* Second, the defendant's contacts must include an act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, "thereby invoking the benefits and protections of its laws." *Id.* Third, the defendant's contacts with the forum must be of a nature that the defendant "should reasonably anticipate being haled into court there." *Id.* (citing *Francosteel*, 19 F.3d at 627). In assessing the defendant's contacts with Florida, the court "examines the quality and nature of the defendant's activity in the state. A significant single act or meeting in the forum state may be sufficient, but the contacts must not be merely random, fortuitous, or attenuated." *Delaney*, 2009 WL 10667046, at *5 (citations and internal quotation marks omitted).

As noted above, the Amended Complaint is devoid of any allegations indicating that RQM+ directed any activity towards Florida, much less that it did so purposefully. Plaintiffs have neither identified any contacts that RQM+ has with the forum state[8] nor offered anything to rebut RQM+'s evidence, in the Wnek Declarations, that it has no office, no

---

[8] For the reasons discussed above, this Court rejected those purported contacts identified by Plaintiffs.

executives or top leadership, and no employees that manage its operations within Florida. That being the case, even if any of Plaintiffs' claims survived, it cannot be said, based on the allegations in the Amended Complaint, that RQM+ has "purposefully availed itself of the privilege of conducting business within the State." *Future Tech.*, 218 F.3d at 1251 (affirming dismissal where defendant had a contract with a Florida party but otherwise insufficient contacts) (citing *Alan Richard Textiles, Ltd. v. Vertilux, Inc.*, 627 So. 2d 529, 530 (Fla. 3d DCA 1993) (repeated orders from a New York company to Florida did not constitute minimum contacts when the purchaser of goods had no office, did no business in, and had no other presence in Florida)).

For similar reasons, Plaintiffs have not demonstrated purposeful availment under the effects test. Under the effects test, "the jurisdictional inquiry properly focuses on the *defendants'* relationship with the forum and the litigation." *Env't Mfg. Sols., LLC v. Fluid Energy Grp., Ltd.*, No. 6:18-cv-156-PGB-KRS, 2018 WL 6264836, at *4 (M.D. Fla. Nov. 30, 2018). Here, Plaintiffs point to no evidence connecting RQM+ to Florida in a "meaningful way," such as by demonstrating that RQM+ directed specific acts against the Plaintiffs in Florida. *See Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, No. 8:19-cv-1840-MSS-TGW, 2020 WL 2838825, at *7 (M.D. Fla. Apr. 22, 2020). Under the effects test, merely alleging that a plaintiff suffered an injury in the forum state is insufficient to satisfy the dictates of due process. *See Walden v. Fiore*, 571 U.S. 277, 278 (2014); *see also Buzz Pop Cocktails Corp.*, 2020 WL 2838825, at *7 (applying the effects test and finding that personal jurisdiction could not be premised solely on the injury that the plaintiff suffered in Florida as a result of the infringement); *Env't Mfg. Sols., LLC*, 2018 WL 3635112, at *9 (applying the effects test and stating that "Plaintiffs rely entirely on the fact that Defendants allegedly committed intentional torts that they knew

35

would harm Plaintiffs in Florida. But . . . the proper question is not whether Plaintiffs experienced injury in Florida but whether *Defendants' conduct* connects them to Florida in a meaningful way. Here, the only connection to Florida is that Defendants allegedly knew that their communications . . . to Plaintiffs' customers (which are also not located in Florida) would injure Plaintiffs in Florida. That is not enough.") (emphasis added)), *report and recommendation adopted*, 2018 WL 6264836 (M.D. Fla. Nov. 30, 2018); *Syndaver Labs, Inc. v. Pecoraro*, No. 8:17-cv-1984-JSM-TGW, 2017 WL 10299465, at *3 (M.D. Fla. Dec. 20, 2017) (applying *Walden* and determining that under the effects test, an argument that the defendant harmed a Florida resident was insufficient to establish personal jurisdiction).

In sum, construing Plaintiffs' allegations liberally and accepting them as true, Plaintiffs have not alleged facts demonstrating that RQM+ purposefully availed itself of the privilege of conducting activities in Florida. Therefore, RQM+ does not have sufficient minimum contacts with the forum state.

### 2.   Traditional Notions Of Fair Play And Substantial Justice.

If Plaintiffs had shown that RQM+ did purposefully establish minimum contacts with the forum state, the next inquiry is whether the exercise of jurisdiction over the defendant comports with "fair play and substantial justice," an independent requirement Plaintiffs must satisfy. *Licciardello*, 544 F.3d at 1284 (quoting *Int'l Shoe*, 326 U.S. at 320). A court must consider the burden on the defendant in litigating in the forum, the interest of the forum in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interest of the judicial system in resolving the dispute. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

36

Again, Plaintiffs do not address this issue in their Response. Review of the record reflects that the first factor significantly favors RQM+. The burden on RQM+ is significant and not insubstantial as RQM+ is headquartered in Pennsylvania and has no offices in Florida. The remaining considerations, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute, favor Plaintiffs. But that is not enough to establish jurisdiction over RQM+ consistent with due process. *See Shores Global, LLC v. Njord's Ark A/S*, No. 21-20623-CIV, 2023 WL 2838078, at *21 (S.D. Fla. Feb. 3, 2023) (Damian, J.), *report and recommendation adopted*, 2023 WL 4972787, at *4 (S.D. Fla. Mar. 28, 2023) (Singhal, J.) ("Finally, although the third due process inquiry—addressing the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute—favors [the plaintiff], it is not sufficient to obtain jurisdiction over [the defendant's] consistent with due process.").

On consideration of the circumstances presented here, this Court finds that the exercise of personal jurisdiction over RQM+ would offend traditional notions of fair play and substantial justice contrary to the Due Process Clause. *See Licciardello*, 544 F.3d at 1284 (citing *Woodson*, 444 U.S. at 292). Even if Plaintiffs had shown that personal jurisdiction over RQM+ is proper under Florida's long-arm statute, RQM+ is nonetheless due to be dismissed from this action based on a lack of personal jurisdiction because the exercise of personal jurisdiction does not comport with due process. Therefore, this Court concludes that it lacks personal jurisdiction over RQM+.

### D. *Leave To Amend.*

Finally, this Court notes that Plaintiffs have not requested leave to amend their operative pleading. *See generally* Resp. "When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010). However, leave to amend is not available nor warranted where amendment would be futile. *See Spaulding v. Poitier*, 548 F. App'x 587, 594 (11th Cir. 2013) (holding that there was no abuse of discretion in denying plaintiff leave to amend his complaint because such an amendment would have been futile (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007))); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (observing that courts "properly deny leave to amend the complaint under [Federal Rule of Civil Procedure] 15(a) when such amendment would be futile . . . [such as] 'when the complaint as amended is still subject to dismissal.'" (first citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))).

Amendment to overcome the deficiencies identified above is most likely futile, but in light of Plaintiffs' *pro se* status, this Court will afford Plaintiffs **one** opportunity to file a Second Amended Complaint to address the foregoing deficiencies.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant RQM+ LLC's Motion to Dismiss **[ECF No. 11]** is **GRANTED**.

2. Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Any pending motions, including Plaintiffs' Motion for Preliminary Injunction [**ECF No. 24**], are **DENIED AS MOOT**.

In the event Plaintiffs seek to file an amended pleading and have this Court revisit the jurisdictional analysis as to RQM+, Plaintiffs shall do so within **fourteen (14) days** of the date of this Order. Plaintiffs are cautioned that failure to file an amended complaint in compliance with this Court's Order and the Federal Rules of Civil Procedure will result in dismissal of this case **with** prejudice.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 26th day of January, 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Rafael Aguila, *Pro se*
      support@510k-review.com

39